Our next case is submitted on the brief, so I'll go to case number 22-3122, United States v. Coates. Ms. Nichols. Good morning. My name is Paige Nichols. I represent Mr. Coates, the appellant. May it please the Court, the Offense Conduct Guideline at 2G 2.2 includes a specific offense characteristic requiring a five-level increase if the defendant engaged in a pattern of activity. The commentary to this guideline says this pattern may be based on non-relevant conduct. In this case, the district court deferred to the commentary when it relied on 17-year-old non-relevant conduct to apply this pattern of activity. The district court's deference to the commentary was error, and it was error because this commentary doesn't survive Kaiser scrutiny. It can't even get past the first stage of Kaiser scrutiny, which is where we set aside the commentary and we ask, are the guidelines genuinely ambiguous about relevant conduct's role in this specific offense characteristic? And we can arrive at the answer to that question by going to the plain text of the two guidelines that the question implicates. I'll start with the text of the relevant conduct guideline at 1B 1.3a. This guideline tells us specific offense characteristics shall be determined on the basis of a list of items we commonly call relevant conduct and subsection number four, any other information specified in the applicable guideline. So we go to the applicable guideline, the specific offense characteristic at 2G 2.2b.5. The text of this guideline does not specify that any other information beyond that list of relevant conduct we know so well can serve as the basis for a pattern of activity. So we can start and stop with this text because the specific offense characteristic never has to specify that it is limited to relevant conduct. It has to specify if it isn't. That is, if it can be based on anything other than relevant conduct. And that's because relevant conduct is, as this court once described it, a basic structural norm of the guidelines. It's the single right answer when we ask about specific offense characteristics unless otherwise specified in the guideline. So there's no ambiguity in this guideline for the commentary to resolve. Well, you've said all that, but you haven't actually talked about the language of the guideline itself and whether it's ambiguous. Whether the pattern enhancement guideline is ambiguous? Well, there's nothing... That's what we're talking about here. That is what we're talking about. And the question is whether it's ambiguous as to relevant conduct's role in that guideline. That's true. So the government has pointed out... There's other questions about its ambiguity too, however. It may not only be about that question, I suppose. But what does pattern of activity mean without the guideline? Without the comment, I'm sorry. Right, without the comment. Then we do what we always do when we want to know what something means, and we go back to the relevant conduct rule. And we see that it includes the defendant's acts that are part of the offense. And now here, it's just the defendant's acts, not the co-defendant's acts. But it might also include harm. And if there had been multiple counts, it would include a course of conduct related to those counts. But like this court said... So your premise is that you can never have non-relevant conduct, can never be specific to an offense. Never. Because it is sometimes in the guidelines, isn't it? The government points out there's a number of guidelines, Chapter 2 guidelines, where non-relevant conduct, specific recidivism is specific to an offense. And so why not here? Because it's not specified in the pattern guideline. It is specified in the recidivism guideline provisions themselves. Those are guideline provisions that say... I'm missing what about 1B13 makes it have to be specified in the guideline itself. It's the language of Subsection 4 itself. And that is the most precise language that we see telling us where to look for something that's otherwise specified. When the thing that's otherwise specified is other information, then we have to give that language in Subsection 4 meaning. Otherwise, we're not doing our textual analysis. And that is the reason that it has to be specified in the guideline itself. That's also consistent with... We've set out the history of 1B1.3 in our brief. Originally, that entire guideline was kind of collapsed into a single paragraph. Now, it's set out with these enumerated types of relevant conduct and Subsection 4, which uses that specific language about in the specified guideline. I know the government had pointed out some other questions. Counsel, before you go down that road, what do you do with 1B1.7, significance of commentary? Right. 1B1.7 only supports our position. And that's because 1B1.7 tells us exactly what the role of the commentary is. And it's not the same role as the guideline. It's not a rule-making role. Commentary is different. It can interpret or explain the rules in the guidelines, but it can't write the rules. And the other things it can do is it can give background information. But the commentary provision says, failure to follow such commentary could constitute an incorrect application of the guidelines. Sure. That's right. In the sentence, possible reversal on appeals. That's right. And that's right as long as the commentary passes Kaiser-Muster. And this commentary doesn't for the reasons I've just been articulating. Okay. Okay. Wait a minute. Let me ask you this. You said if it passes Kaiser-Muster, if Kaiser does not apply, then your whole argument goes away, correct? Not the entire argument, because as you'll recall, the first half of our brief, we argue that we even win under Stinson, because the guidelines are so clear about the rule of relevant conduct that this commentary saying it doesn't have to be relevant conduct conflicts with the guideline, and so we win under Stinson. But Kaiser applies here. Isn't that contrary to the U.S. v. Groves? No, Groves wasn't doing... An application of Stinson? Groves was not doing a Stinson analysis. It was doing an ex post facto analysis. So it was not comparing the commentary to the guideline. It was comparing an old commentary and guideline combo with a new commentary and guideline combo. And so it wasn't really doing... It definitely wasn't doing a Kaiser analysis, and it wasn't even doing a Stinson analysis. So this Court isn't bound by Groves in this case, whether you're proceeding under Stinson or Kaiser. It did say, though, that the... Let's go back to Stinson. My understanding under Stinson, no ambiguity needs to be shown. Well, Stinson doesn't really speak in terms of ambiguity. It speaks in terms of a conflict. So the Court can defer to the guideline as long as it doesn't directly conflict with... Can defer to the commentary, pardon me, as long as it doesn't conflict with the guideline. And when we read the guideline, the pattern of activity guideline, in conjunction with the relevant conduct guideline, as we have to do because that's the structural norm, then the commentary conflicts with it. And that's why it violates Stinson. But if I can give a little pitch for why Kaiser does apply here, it's a pretty clear through line from... Stinson tells us Seminole Rock applies to guideline commentary. Kaiser clarified Seminole Rock. This Court has already said that Kaiser changes this Court's analysis when it's doing a Seminole Rock slash hour evaluation. Well, wait, let me ask you right there because... But Kaiser does not overrule Stinson. It does not overrule Seminole Rock. It does not overrule hour. It says it's clarifying all of these things and... But it doesn't overrule it. That's right. But this Court has already applied Kaiser to other agency interpretations. Kaiser was a Veterans Administration case. This Court has applied Kaiser in the Social Security Administration context, in the OSHA context, in the EPA context. This is just another agency interpretation. Right. And when you say just another agency, you're saying, yes, just another executive agency. But it doesn't make a difference if the agency in question is not an executive agency. Well, it didn't in Stinson. And like Judge Baldock said, Stinson hasn't been overruled in that regard. The level of... Well, I wholly agree with you. I'm asking about Kaiser only. I mean, to me, if Kaiser applies, then Kaiser applies. If Kaiser doesn't apply, Stinson still applies. So my question is about Kaiser only. If all the agencies you talk about, everything we've seen so far, makes Kaiser applicable only to executive agencies, that does not mean that it applies to agencies related to other branches of government, correct? Right. But I don't think Kaiser actually draws that limiting factor. Stinson tells us that the reasons the guidelines are subject to seminal rock deference in Stinson were because of their functional purpose, their functional purpose being assisting in the interpretation and application of the rules that the rulemaking body promulgates. That analogy serves just as well in this context as it did in Stinson. And that's why it comes through there. I would like to reserve my rebuttal time if I may, unless there are some other questions right now. That's fine. Thank you. Good morning, Your Honors. May it please the Court, Sonia Ralston for the United States. I'd like to start with a clarification from the record that the defendant below conceded that if the standard is Stinson, he loses. And that's at the record at 1 page 50 in the briefing below. He says that the commentary passed muster previously but no longer does under Kaiser. So I think that that argument, that ship has sailed. On the guidelines themselves, the pattern of activity is itself an ambiguous phrase. This is the enhancement under 2G2.2B5. What is a pattern? Over what time horizon does it occur? What exactly counts as the activity that's relevant? All of these questions are answered by the commentary. And this is what the commission has done consistently throughout the guidelines. As we're talking about how- It comes within the specific offense heading, and that's where the government takes this, or the defendant takes this. So can you address that? I can. And I don't disagree with you that if you didn't assume it was under the specific offense heading, there might be something there. But that's what we have. So there's two ways to read specific offense characteristic as a heading. One is as the defense does, which is to say the specific characteristics of the offense that was committed. The other is to say the characteristics specific to the offense, which is how the district court read it below. And I think the more consistent reading within the guidelines for two reasons. The first is that there are many guidelines like this one, the others we've cited in our brief, that do provide for consideration of non-relevant conduct as a specific offense characteristic. And I think you'll see in the reply brief that the defendant has backed away from the absolute position they took in the opening brief. They accept that a guideline in specific offense characteristic may otherwise specify that non-relevant conduct applies. If the title specific offense characteristic held the talismanic meaning that they give it in the opening brief, that would not be possible. The second argument here is the structure of the guidelines to see how Chapter 2 and Chapter 3 work together. Chapter 2 provides a variety of considerations that courts should look at in determining the appropriate punishment for the specific offense of conviction. Chapter 3 provides characteristics that apply to all offenses. Many of the things in Chapter 3, however, are characteristics of the specific offense. How many victims were there? Were you a position of power? What was your role in the organization? And so I think that this idea that the sub B things, specific offense characteristics, have to be specific to the offense, falls away when you look at that comparison. That the other reading that we're saying, what makes this offense particularly bad or particularly worthy of punishment makes more sense. And that's why you see things like specific recidivism occur over and over again as a specific offense characteristic. These are things that sometimes also apply in the criminal history context in Chapter 4 because they are recidivism. But they are also things that make this offense worse. That these child sexual exploitation offenses are worse if you have previously exploited a child. An immigration offense is worse if you have previously violated immigration law in a way that it is not particularly as bad if you previously violated a fraud statute. So I think that they overread those words. I'd like to turn to the relevant conduct question. Well, wait a minute. Before you go on with that. If the primary charge is a fraud charge, then pass bond to the conduct could well be wrong, correct? It seems to me that what you're arguing doesn't quite fit. If it's immigration, the primary charge, then primary immigration violations are pertinent. But if fraud is the primary charge, then history of fraud is pertinent. And that doesn't help you to say that if the primary charge is immigration, propensity for fraud in the past is not relevant. I don't see how that helps you at all. We have to talk about apples and apples in each vertical setting, correct? I disagree, Your Honor. The guidelines, some of the guidelines, but not all of the guidelines, contain specific offense characteristic enhancements for specific recidivism. For having previously committed the same offense. That's like 2L2.2, the immigration guideline. This one here, the pattern guideline that occurs also in the cultural heritage context, in the money laundering context, in the harassment context. Those enhancements are saying that specific recidivism is particularly problematic in addition to the way general recidivism is problematic in Chapter 4. And what 2L2.2, for example, is saying is that a prior any felony offense enhances your illegal reentry, but a prior illegal reentry offense enhances it even more. Because the specific characteristic of that prior offense means your current offense is more worthy of punishment because you continue to disobey this specific prohibition. But shouldn't that be stated in Chapter 4? And that is, if the criminal history involves a similar offense, you get a greater height in that property where it would go? So there are several enhancements in Chapter 4, career offender, serial sexual offender, that do apply to a group of offenses. Say if you committed one of the series of offenses, if you previously have a similar type of criminal history, enhance higher. But again, those are things that apply across a broad swath of offenses and not to a particular offense. And that's what we're talking about in the sub B specific offense characteristics, are things that make this particular offense particularly worthy of extra punishment. And I think also if you look at the, going back to the pattern of activity itself, a pattern, of course, requires more than one, usually occurs over some period of time. The guideline here, however, is a point in time offense guideline. It applies to receipt, distribution, possession. It doesn't apply to hands-on offenses. There's a different guideline for those offenses. And indeed, there's a cross-reference in this guideline, in subsection C, that says if the offense conduct, so the relevant conduct, includes essentially the production of child pornography, a hands-on offense, go to that guideline, even if you weren't convicted of production. So the guideline, they're saying, well, this should only apply to relevant conduct, but there's going to be a very, very small universe of things that would count, if anything. And so we're talking about tools of construction. The rule against surplusage is another thing to consider. I think also when you look, take the definition. They want their cake to eat it too, right? They want the definition of sexual abuse of a minor that doesn't include the trafficking of child exploitation material, right? That's in the commentary. But they don't want to take the part of the commentary that says, look to the broader time horizon. If you want the narrowing definition of sexual abuse or exploitation, then it becomes even harder to understand how, in which circumstances, you're going to apply this pattern of activity that's relevant conduct to the trafficking of child exploitation material, where the pattern does not include any trafficking of child exploitation material. Okay? It doesn't, and also does not include the production of child pornography, in which case the cross-reference sends you to a different guideline. So I think that it does very little work under their definition. I think also... Could you address the rule of lenity? Yes, Your Honor. You talk about it as a catch-22, and it kind of is, and I'm not sure what you're suggesting how we should apply it here. Yeah. So the catch-22 point is an explanation for why you shouldn't consider the rule of lenity one of the tools of statutory construction, which is what they want you to do. And I think the Supreme Court gives you good cover here, where it says in Shuler that the rule of lenity applies only when, after consulting traditional canons of construction, we are left with an ambiguous statute. If the rule of lenity is one of the canons of construction, why does it apply only after you've consulted all the tools of statutory construction? It's not. It's something that applies only after you've done all the work and you are left with not just an ambiguity, but a grievous ambiguity. And I think a grievous ambiguity is something broader than a genuine ambiguity, which is what Kaiser requires. A grievous ambiguity is something where we can make no more than a guess. It's something where you've looked at everything from which aid can be derived, and here the commentary has to be a thing from which aid can be derived. The commission clearly thinks that it is. It's there to help you understand. 1B1.7 says that the commentary is here to define, to clarify, to interpret how to apply the guidelines. I'd like to touch on relevant conduct. I think if you look at the structure of the relevant conduct guideline, you will see that their argument collapses upon itself. They want to say that the introductory phrase, unless otherwise specified, means exactly the same thing as subsection A4 specified in another guideline. But if you read the guideline, it says, unless otherwise specified, when looking at these four types of things, consider the following, what the defendant did, the course of conduct, the harm, and anything else specified in the guideline. So the two things cannot mean the same thing, right? Because it says, unless otherwise specified, look to things that include something specified in the guideline. So otherwise specified, to do any work, has to mean something other than what is included in A4. And the commentary throughout routinely otherwise specifies. As this court said in Thomas, the consistent practice of the commission throughout the guidelines is an important consideration in interpreting the guidelines. The commission's consistent practice of otherwise specifying in the commentary is itself a structural norm, as they would like to say, that looking at the commentary is a structural norm of the guidelines. So I think if you look holistically, pattern of activity leaves a lot of open questions. It allows this court to, yes, go through the canons of construction. Look at the text. Look at the structure. Look at the history. And when you do that, you are left with two competing interpretations, which as this court has said, meritorious rival interpretations is the standard under Kaiser, and that's from the Walker case. Yes? Counsel? Counsel? Counsel? If Kaiser does not apply to the Stinson commission as it applies to executive agencies, what happens in this case? So if Kaiser doesn't apply to the commission as it does to other agencies, I think you would fall back to Stinson, which clearly does apply to the commission. And Stinson says unless there's a clear conflict, defer to the commentary. There's no clear conflict here. The defendant conceded below that under Stinson he loses. And so I think if you're applying Stinson without the Kaiser gloss, we clearly win. Now I think that the Kaiser, because it is a gloss on our, and our and Seminole Rock are the basis for Stinson, there's a logical link to apply Kaiser's gloss to the guidelines. But I want to be clear that it's a gloss. Kaiser does not overrule our, it doesn't overrule Seminole Rock, it doesn't overrule all the other cases. It provides a clarification of what it means for the role, the kind of interplay between courts and agencies. And this court has successfully applied the Kaiser gloss in a number of administrative law contexts and found in some cases that the regulations are clear. For example, in the immigration context, this court has said a rule that says at any time means at any time. Fair. I understand your position, but it is clearly the application of Kaiser was not briefed. I take it that because the government kind of went along, we'll analyze this under Kaiser. It is affirmatively the government's position that Kaiser applies to sentencing commission. It is. All right. Thank you. It is. And we've taken that position repeatedly in the Supreme Court as well. And in a number of other circuits, which seem to be rather unified on this point. Let me ask you, is there something actually pending now in a cert that's been granted? Or a cert that's under consideration as to whether or not Kaiser applies to the sentencing commission? So there have been a number of cases where I see my time is up, but I'd just like to answer your question, where defendants have challenged guidelines under Kaiser, lost, and petitioned to the court. The government has opposed those petitions successfully. They've all been denied. But we have acknowledged that the Kaiser gloss applies. And those petitions continue to be raised at this point because the court has denied them. We are often waiving our response. My question is, is there anything pending in the Supreme Court, either in a granted cert or a pending cert, that challenges the application of Kaiser to the sentencing commission? That's my question. So there's certainly no granted cases. If we didn't face that, we need to know. Yeah, there are no granted cases. I'm sure that there are cases pending where defendants have raised commentary challenges based on Kaiser in the court. I am not aware of the exact cases, but there are always some pending, at least until the next conference. If there's nothing else from the court, we ask you to affirm. Thank you. Will you add a minute and a half to him, Tom? A minute and a half. Thank you. I'll start with the government's claim that we conceded Stinson and therefore cannot raise a Stinson claim here. That part of what counsel said below was part of a long conversation with the court at sentencing. But the bottom line is the district court said it passes Stinson-Muster. The district court made a Stinson ruling, so this court can consider our appeal from that ruling. By the way, the government waived any argument that we waived that by not even addressing our Stinson argument in its brief, and I meant to say that first. The government has a lot of examples of places in Chapter 3 and maybe some places in Chapter 2 where the guidelines have specified that something other than relevant conduct, specifically recidivism, can be taken into account. That's fine. That's completely consistent with the relevant conduct rule. And so those examples make a great contrast to what we have here in the pattern of activity enhancement because those are clearly recidivist provisions. They make it very clear in the guideline itself. I'm not sure quite how to respond to the government's interest in policy reasons like it's worthy of extra punishment. I'm not sure where that's supposed to fall in our analysis, but it's certainly not part of our textual analysis, and I don't think it has any place here. But I would just mention that this is the prior that was relied on here, also counted as criminal history, also counted to trigger a statutory mandatory minimum. But, again, that's not part of our textual analysis. I'll address lenity because I know the quote was interested in that, and it is an interesting kind of tricky question about, well, if the guideline looks ambiguous, what's the tiebreaker? Is it lenity or is it the commentary? And I think Kaiser tells us it's lenity because we have to exhaust all of those tools in our toolkit before we can turn to the commentary. And so that's why lenity works here. Now, I can anticipate the follow-up argument, which is does all the commentary go out the window because of lenity? And it doesn't, and it doesn't because it will go out the window in cases where the commentary across the board is going to result in increased punishment. But there aren't that many instances of that. That's a pretty big guideline book we have there, and an awful lot of commentary is neutral, it's background, it's departure-related, and some of it is even, believe it or not, defendant-friendly, so it's going to be a small category of cases. But in answer to the question of the ones where we're challenging the commentary, if it is going to be subject to the rule of lenity, yes, those are going out. Easy fix. Sentencing Commission can move those rules into the guidelines themselves, just like it has proposed to do with the career offender guideline with respect to inchoate offenses. So the Commission is already on this. One of their proposals this year was to ask the question over a period of time about the validity of the commentary, and they're already taking action to move things into the guidelines themselves. What about the fact it has to be a grievous ambiguity? Yeah. Now, if that argument had been made in the government's brief, I could have responded to it in our reply, but I have looked at both this Court's cases and Supreme Court cases, and this idea that there's some difference between genuine and egregious, it doesn't play out in the cases, and so I just don't buy it. I don't think this Court needs to either. Now, if this Court is concerned about the introductory language in 1B1.3a versus subsection 4's language when it comes to unless otherwise specified, the introductory language, if you would like, you can draw a circle around that language there and make an arrow going from that to the word shall in the introduction, and in subsection 4 you can put a circle around that language and put an arrow going up to the list of relevant conduct there, and each one can serve a separate purpose there. Subsection 4 is where we are because what we're talking about is information in addition to that list of relevant conduct that we're all familiar with. So that's how this Court can give separate meaning to each of those provisions. Thank you very much. Thank you, counsel. We very much appreciate your arguments, but extremely helpful. The case will be submitted and counsel are excused, and we will take a 10-minute break and come back at 10.50. How about that?